UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 2:15-cv-01111-JHE |
| | ) |
| INFINITY INSURANCE CO., et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER[1]

Plaintiff Stephanie Davis ("Davis") initiated this action against Infinity Insurance Co., Infinity Property and Casualty Corp., (collectively "Infinity Defendants") and Robin Adams (collectively "Defendants") on July 1, 2015.[2] (Doc. 1). On August 29, 2016, the undersigned entered a memorandum opinion and order denying Davis's motion to amend her complaint, (doc. 23), but permitting her to file another motion to amend her complaint that complied with the extensive analysis outlined in the memorandum opinion and order. (Doc. 40). On September 28, 2016, Davis moved for leave to file a second amended complaint, (doc. 41), and the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

[2] On August 14, 2015, Defendants Infinity Insurance Co. and Robin Adams moved to dismiss Davis's amended complaint or, in the alternative, for a more definite statement under Rule 12(e), alleging, in part, that the amended complaint was a shotgun pleading. (Doc. 9). With her response, Davis attempted to file a second amended complaint, (*see* doc. 18), asserting in her response that the amendment mooted the bases for dismissal and for a more definite statement, (doc. 19 at 3). The second amended complaint was stricken as improperly filed, and Davis moved for leave to amend her complaint, attaching a proposed second amended complaint. (Docs. 21, 23, & 23-2). Defendants responded, contending the proposed second amended complaint was futile and still a shotgun pleading that merely exacerbated many of the issues addressed in the previous motion. (Doc. 25). Davis' reply denied these assertions. (Doc. 28).

1

undersigned granted Davis's motion, (doc. 42). (*See* doc. 43 (second amended complaint)). Defendants move for dismissal of Davis's second amended complaint or, in the alternative, for a more definite statement. (Doc. 44). The motion is fully briefed and ripe for review. (Docs. 44, 48, 49). For the reasons stated below, the motion to dismiss is **DENIED**; however, the alternative motion for a more definite statement is **GRANTED**, as limited herein.

## I. Standard of Review

Rule 12(b)(6), FED. R. CIV. P., permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

## II. Background[3]

This case arises out of the Infinity Defendants' implementation of a Spanish/English-bilingualism requirement applicable to employees and potential hires (referred to as the "bilingual requirement"). (Doc. 43 at ¶ 12). Davis, an African-American, who was employed as a Policy Services Specialist and does not speak Spanish fluently, was terminated under the policy. (*Id.* at ¶¶ 12, 16, 30). Twelve of the seventeen people terminated from the same job were African-American. (*Id.* at ¶ 18). However, Infinity Defendants retained five white employees despite them being less senior or less productive or having received formal discipline (which Davis had not). (*Id.* at ¶ 15).

Infinity Defendants also told Davis that, in order to receive benefits under the 2014 Profit Sharing Bonus Plan, she would have to sign a severance agreement giving up her right to file or pursue EEOC charges or Title VII and § 1981 claims, despite already being entitled to the bonus. (*Id.* at ¶ 33). She was given until December 1, 2014, to sign the agreement. (*Id.* at ¶ 35). However, on November 12, 2014, she contacted Infinity Defendants to inform them denial of the plan benefits violated ERISA, but the Infinity Defendants' Director of Benefits and Compensation responded that the company was standing by its decision to only pay benefits under the plan to

---

[3] "When considering a motion to dismiss [or, as here, its equivalent], all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, these "facts" are taken directly from the proposed second amended complaint.

those who signed the severance agreement. (*Id.* at ¶ 37). Davis did not sign the severance agreement and filed an EEOC charge in October 2014, which was mailed to the Director of Benefits and Compensation on October 31, 2014. (*Id.* at ¶ 35). She was then denied payment of her benefits under the plan. (*Id.* at ¶ 36).

In her second amended complaint, Davis asserts the following claims: (1) Title VII disparate impact termination claim against Infinity Defendants; (2) Title VII disparate treatment termination claim against Infinity Defendants; (3) Title VII and 42 U.S.C. § 1981 disparate treatment termination (race) claim against Infinity Defendants; (4) Title VII and 42 U.S.C. § 1981 retaliation in benefits against all Defendants; (5) Title VII disparate impact in benefits against all Defendants; (6) ERISA: breach of contract against all Defendants; (7) ERISA: interference with rights against all Defendants. (Doc. 43).

### III. Analysis

**A. The Second Amended Complaint Does Not Comply with Rule 10(b) and Retains Characteristics of a Shotgun Pleading**

The second amended complaint, Davis's operative pleading, is her *fourth* attempt to present her claims. Defendants contend, like her previous attempts, this complaint is a "shotgun" pleading, neither discrete nor succinct, fails to properly limit paragraphs, and "masks and muddles claims such that Defendants cannot even frame a responsive pleading." (Doc. 44 at 2). In rejecting Davis's most recent proposed pleading, the undersigned cautioned Davis against "an extended morass of extensively repeated legal conclusions interspersed with page-long paragraphs of factual allegations, culminating in a confusingly organized series of counts," and reminded Davis that her complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

4

(Doc. 40 at 5, 43). While the second amended complaint, (doc. 43), is an improvement, it falls shorts of these requirements.

After allegations addressing jurisdiction, parties, and administrative exhaustion, the second amended complaint contains a statement of facts, which includes thirty-two paragraphs of allegations (¶¶ 11 – 42). (Doc. 43). The remainder of the second amended complaint is organized into seven counts containing a single legal theory[4] and identifies the defendants to which each applies; finally closing with a prayer for relief. (*Id.*). Each of the counts incorporates several paragraphs of allegations of the statement of facts. Although Davis's second amended complaint is less confusing and shorter than previous her submission, Davis's extremely liberal interpretation of Rule 10(b), insistence on redundancy and incorporating the same set of allegations into different claims, as well as her inclusion of legal arguments/conclusions muddies her allegations and claims beyond what is permissible.

As the Eleventh Circuit has explained:

> The purpose of [the pleading rules] is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not. "Shotgun" pleadings, calculated to confuse the "enemy," and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked, are flatly forbidden by the [spirit], if not the [letter], of these rules.

---

[4] Title VII and 42 U.S.C. § 1981 are combined in certain counts because the two statues are closely related and the disparate treatment claims in each are based on the same facts. This manner of pleading is appropriate. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318 (11th Cir. 1998).

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (internal citations omitted). Failure of the court to require the parties to submit proper pleadings unnecessarily expands and confuses discovery. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 (11th Cir. 2014).

1. **Rule 10(b)**

Federal Rule of Civil Procedure 10(b), on the form of pleadings, provides:

> Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, *each limited as far as practicable to a single set of circumstances*. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

(emphasis added). Davis's second amended complaint contains paragraphs that are not practicably limited to a single set of circumstances. Instead, the paragraphs contain a litany of unrelated facts. Defendants have pointed to some of the most egregious examples:[5]

> Paragraph 19: An inference or presumption that the plaintiff was discharged because of her national origin, in whole or in part, is established by the fact that: (1) she is a member of the protected class of non-Hispanic employees; (2) she was fully qualified for her job and was formally evaluated as a good employee; (3) she suffered an adverse employment action when her employment was terminated; (4) she was replaced by Hispanic employees; (5) Hispanic employees who were less able to perform the duties of plaintiff's position and otherwise similarly situated to the plaintiff were treated better than her by being allowed to continue as employees in spite of their inferior performance in the job classification held by the plaintiff; (6) the stated reason for plaintiff's termination – that her job required her to be fluent in Spanish – was false because her job did not, in fact, require such fluency; and (7) requiring fluency in Spanish discriminates against non-Hispanic employees, like the plaintiff, whose national origin does not have Spanish as their primary language. Prior to plaintiff's termination, all of Infinity's employees spoke English but were not required to be fluent in Spanish. Infinity, however, changed its employment policy to require that all of its employees who were already fluent in English in jobs like the one performed by the plaintiff must also be fluent in

---

[5] Defendants also point to ¶¶ 9, 24, 30, and 35. (Doc. 44 at 6 n.6).

Spanish. Among the class of persons who speak English, Infinity's change in policy adversely affected non-Hispanic persons like the plaintiff for whom Spanish was not their primary language and favored Hispanic persons for whom Spanish is their primary language.

Paragraph 31: Infinity told Stephanie Davis that she was not being paid the profit sharing benefits she had earned for the annual period ending September 30, 2014, because she had not signed an agreement not to file or pursue an EEOC Charge or a Title VII or §1981 lawsuit. Stephanie Davis elected to file such an EEOC Charge rather than sign the agreement Infinity gave her which conditioned payment of her profit sharing benefits on not filing such an EEOC Charge. Immediately after Infinity learned that she had made that choice to file and participate in EEOC proceedings, it denied her the profit sharing benefits to which she was independently entitled. Infinity's policy of not paying profit sharing and other benefits to employees who choose to pursue EEOC Charges or Title VII/§1981 lawsuits was both facially discriminatory and had disparate impact on employees like Stephanie Davis who were disproportionately affected by the requirement that they not pursue an EEOC charge or Title VII claim as a condition of receiving such benefits. Such policy and denial of benefits also violated the provisions of 42 U.S.C. §2000e-3 which provides that "[i]t shall be an unlawful employment practice . . . to discriminate against any employees or applicants . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, . . . , assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3.

Paragraph 37: The plaintiff sent the defendants correspondence on November 12, 2014 which requested payment of her profit sharing benefits and stating that she had been advised by the Employee Benefits Security Administration ("EBSA") that "it is in violation of the ERISA Law not to pay the Profit Sharing Bonus that will be paid out to everyone else" adding that she "felt it was imperative for me to share this information with you." Exhibit 5. That same day, Infinity's Director of Benefits and Compensation Ronald Ostenfeld responded that "Infinity stands by its decision to only pay Profit Sharing Bonus to those individuals . . . [that] participat[e] in the Severance Plan" by agreeing not to file EEOC Charges or a Title VII/§1981 lawsuit. *Id.* The plaintiff's profit sharing rights and benefits were independent of any consideration received as severance. This request by the plaintiff which requested that Infinity pay the plaintiff the profit sharing benefit to which she was entitled was legally sufficient to satisfy any legal requirement that the plaintiff exhaust her remedies under ERISA prior to filing suit. The defendants had previously announced that they would not pay the profit sharing benefit unless the plaintiff signed a severance agreement. Infinity President and CEO James Gober announced this policy on behalf of Infinity. The plaintiff appealed to Infinity's Director of Benefits and Compensation Ronald Ostenfeld, who responded that "Infinity" stands by its decision. Exhibit 5. After the plaintiff sent this e-mail, Infinity's Director of

> Benefits and Compensation Ronald Ostenfeld blocked the plaintiff's e-mail address so that she could no longer e-mail him from that e-mail address. In the alternative, under these circumstances, it is clear that further attempts by the plaintiff to exhaust remedies through appeals to the Infinity 2014 Profit Sharing Plan and/or the Infinity Property and Casualty Corporation Severance Plan would have been futile.

(Doc. 44 at 5 (citing doc. 43)). These paragraphs, as well as others do not comply with the requirements of Rule 10. Additionally, Rule 8(a)(2) states a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rules 8 and 10 work together "'to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.'" *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted). Davis's rambling, disjointed, and redundant paragraphs prevent this objective from being achieved.

**2. Retains Characteristics of a Shotgun Pleading**

Both Count 2 and Count 3 are disparate treatment termination claims. Count 2 asserts the bilingual requirement discriminated based on national origin, and Count 3 asserts the bilingual policy was a pretext for race discrimination. (Doc 43 at ¶¶ 48-57). Despite these different bases of discrimination, Davis incorporates the exact same underlying allegations, ¶¶12-22 and 28-30, to support each claim. (*Id.*). Although some foundational allegations are material to each of the disparate treatment discrimination claims based on the bilingual requirement, other allegations are immaterial, inconsistent, or both. With this pleading style, it is impossible to know which allegations from ¶¶ 12-22, 28-30 are intended to support which claim for relief. *See Paylor*, 748

F.3d at 1126 (citing *Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996).

For example, ¶¶ 15, 16, and 18 appear to relate to Davis's race discrimination claim and not to her national origin discrimination claim. (Doc. 43). Paragraph 15 alleges Davis was terminated while other less senior and less productive employees of the "opposite race" were retained. (Doc. 43 at ¶ 15). Paragraphs 16 and 18 contain allegations relating to less qualified or productive white employees who were retained. (*Id.* at ¶¶ 16 & 18). These allegations should not be included to support a claim for discrimination based on national origin. Similarly, ¶¶ 19 - 22 contain allegations relating to discrimination based on national origin and are not related to race discrimination. (Doc. 43 at ¶¶ 19-22).

The undersigned specifically directed Davis to address this pleading inconsistency in the previously-entered memorandum opinion and order. (Doc. 40 at 41). While it appears she attempted to do this with the paragraphs under each claim (Count 2 ¶¶ 48-53; Count 3 ¶¶ 54-57), the incorporation of inconsistent and immaterial allegations walks back any attempt at clarity. "Where the allegations of a complaint are 'vague and ambiguous - leaving the reader to guess at precisely what the plaintiff [is] claiming,' the court should order a repleader." *Holbrook v. Castle Key Ins. Co.*, 405 F. App'x 459, 460 (11th Cir. 2010) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128 (11th Cir. 2001)).

Although the results are less confusing, this problem is also seen in how Davis incorporates the same paragraphs (¶¶ 31-38) in support of each of her four claims based on the denial of benefits/profit sharing. (Doc. 43). While there are many common allegations between one or more of the benefit/profit sharing claims, not all of the allegations are related to each of the claims.

9

While a plaintiff may incorporate paragraphs that are applicable to more than one claim or that are foundational, claim-specific allegations should only appear under each claim

### 3. Legal Arguments/Conclusions and Redundancy

Davis contends the legal arguments and conclusions in the second amended complaint are permissible because they arise from the "unavoidable mixture of factual allegations and inferences or legal conclusions" and then argues that legal conclusions were included to "prevent yet another motion to dismiss." (Doc. 48 at 9-11). This position confuses the directive to plead facts with the requirement to make arguments, which arises after the defendant moves for dismissal. Generally, legal arguments, case citations, or quotations from other source materials have no place in a complaint. *See Moore v. McCalla Raymer, LLC*, 916 F.2d 1332, 1342 (N.D. Ga. 2013). Davis may include factual allegations, such as census data in her complaint, but legal arguments as to application of those facts is not proper in a complaint.

Finally, Davis's second amended complaint is rife with redundancy. For example, the undersigned has lost count as to how many times Davis alleges she was qualified to do her job prior to the bilingual requirement, (*see e.g.,* doc. 43 at ¶¶ 11, 19, 28, 30, 50, 55), or that she was denied profit sharing benefits she was entitled to (*see e.g., id.* at ¶¶ 31, 32, 35, 36, 40, 59, 61, 64 (denied benefits because of EEOC Charge), ¶¶ 33, 35, 37, 62, 64 (required to sign wavier/release), ¶¶ 60, 62 (facially retaliatory)). These are foundational allegations, but they do not need to be restated and interspersed into numerous paragraphs, many times within the same claim. Such extreme redundancy unnecessarily complicates the pleading process.

B. **Counts 4 & 5: Davis's Title VII Retaliation in Benefits Claims are Beyond the Scope of her EEOC Charges**

Defendants contend Davis's Title VII retaliation claims, which are based on Davis's allegation that Defendants improperly conditioned payment of previously earned benefits on Davis agreeing not to file an EEOC Charge or related lawsuit, are unexhausted and therefore barred, because such claims are beyond the scope of her EEOC charge. (Doc. 44 at 8; doc. 49 at 6-8). Davis argues her retaliation claims are not barred and should not be dismissed because her EEOC charge provides Defendants with sufficient notice of the basis for her retaliation claims since they are "inextricably interrelated" to her termination, which is alleged in the charge.[6] (Doc. 48 at 12).

Prior to filing a Title VII action, a plaintiff must file a charge of discrimination with the EEOC. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir.1970). The purpose of this prerequisite "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dept. of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983)). Judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint[;]" however, "allegations of new acts of discrimination are inappropriate." *Id.* (citing *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989)). Courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]," *Sanchez v. Standard*

---

[6] Additionally, although Davis is correct in stating that the administrative exhaustion requirement is not jurisdictional, *see Zipes v. TWA*, 455 U.S. 385, 393 (1982), she has neither alleged nor established that wavier, estoppel, equitable tolling, or any other ground to relieve her of this requirement.

*Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970), and have noted that "the scope of an EEOC complaint should not be strictly interpreted." *Id.* at 465. However, a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000).

Davis filed an EEOC Charge on October 27, 2014, based on purported discrimination that took place on September 17, 2014 to October 27, 2014. (Doc. 43-1). Davis marked the form box for discrimination based on "race" and alleged as follows:

> I am black. I was hired by the above named employer on April 15, 2002, as a Cash Clerk. I am currently employed as a Policy Services Specialist II. My job performance evaluations all show that I exceed standards. In June 2014, management started laying off non-Spanish speaking employees. On September 17, 2014, management informed the staff that they were going to lay off additional employees by October 31, 2014. I received a severance package from management on October 20, 2014, informing me that my last day of work would be on October 31, 2014. Although I am being laid off, management has not adhered to any of the guide [sic] lines that were presented in the staff meeting that occurred on September 17, 2014. Had management adhered to their guide [sic] lines as was address [sic] on September 17, 2014, I would not have been impacted by their decision to lay me off.
>
> I believe that I am being discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended. Management has retained Black and White employees with less service time/seniority, and how are less productive than I [sic].

(Doc. 43-1). On October 29, 2014, Davis, with the assistance of counsel, filed an amendment to her EEOC charge, indicating "continuing action" for dates of purported discrimination. (Doc. 43-2). On this form, Davis marked boxes for discrimination based on "race," "color," "national origin," and "retaliation." (*Id.* at 1). Davis alleged her employer had

> discriminated against me because of my national origin as a non-Hispanic, and/or non-Spanish Speaking employee. Such racial and/or national origin

12

> discrimination has also adversely affected by compensation, terms and conditions of work as well as my opportunity in the future to be hired, re-hired or recalled from layoff. In addition, I have been laid-off and/or terminated in retaliation for my previous opposition to racial and/or national origin discrimination unlawful under the Civil Rights Act of 1964 and 1866 by laying me off, terminating my employment and/or not considering or rehiring me for future employment opportunities.

(*Id.* at 1). Davis included four additional paragraphs of allegations related to purportedly unlawful "practices, procedures and criteria that have a disparate impact" an/or disparate treatment related to the bilingual requirement and its impact on "non-Hispanic or non-Spanish speak[ers]" and "African-American and other black employees." (*Id.* at 2). The EEOC charges contain no allegations about Defendant's policy or plan to condition the bonus payment upon an agreement to release or waive the right to file an EEOC charge or related lawsuit. (*See id.* at 1-2). There is no mention of or reference to the 2014 Profit Sharing Bonus Plan or any type of profit sharing benefits in either of Davis's EEOC charges. Although Defendants did not deny payment of the profit sharing benefits until December 1, 2014, the Infinity Defendants informed Davis on October 20, 2014, she would need to sign an agreement not to file an EEOC charge or related lawsuit by December 1, 2014, to retain profit sharing benefits. (Doc. 43 at ¶¶ 35 & 36).

This is not a situation where the unexhausted claim is the result of an unrepresented plaintiff filing an EEOC charge with scattered factual allegations that do not support the proffered legal claims. Davis's failure to indicate in her charge that she believed conditioning her profit sharing payment on signing an agreement to forgo filing an EEOC charge or related lawsuit as unlawful retaliation is not a mere procedural technicality or poor drafting by a novice. To the contrary, it is apparent Davis was represented by counsel when she filed her amended charge

detailing the purported discriminatory impact of the bilingual/Spanish-speaking policy. (*See* doc. 43-2).

*Gregory* and *Sanchez*, two cases Davis cites, are distinguishable from the present case. The plaintiffs in those cases, who were not represented by counsel at the time, neglected to mark a form check-box indicating the legal basis of their discrimination claims, but included facts that would have reasonably indicated alternative legal theories. *See Gregory,* 355 F.3d at 1280; *Sanchez,* 431 F.2d at 462–63. Davis had a full and fair opportunity, with the assistance of an attorney, to state the general factual basis for her retaliation in benefits claims(s) to the EEOC in an additional amendment or separate charge but failed to do so.

The question is whether the alleged profit sharing payment agreement is within the scope of the EEOC investigation that could reasonably be expected to grow out of Davis's charge. *Alexander*, 207 F.3d at 1332. The answer is no. The allegations of retaliation in benefits do not clarify, amplify, or more clearly focus the allegations in the EEOC charge, but rather are allegations of new acts of discrimination (specifically retaliation), which is inappropriate. *See Gregory*, 355 F.3d at 1279-80. Such allegations would be outside of how an investigation of the allegations in the EEOC Charge would proceed. Specifically, because the EEOC charge alleges unlawful race and national origin-based terminated and retaliation, pointing to the bilingual policy and Davis's opposition to the policy, a reasonable EEOC investigation would likely look into the discriminatory impact or intent of the bilingual/Spanish-speaking policy or whether Davis was terminated for opposing such a policy. The EEOC may also look to whether there were other motives behind implementation of the policy. Conditions of the severance agreement and receiving a profit sharing bonus would be outside the scope of such an investigation, as contending

this is retaliation is a wholly separate claim. As such, Davis failed to exhaust her remedies prior to filing suit in the district court as to her Title VII "retaliation in benefits" claims.

Finally, Davis's argument that exhaustion is an issue for summary judgment is misplaced. Courts routinely grant Rule 12(b)(6) motions on the basis that a plaintiff failed to exhaust the administrative requirements. *See Barclay v. First Nat'l Bank*, 1:14-cv-01573-KOB, doc. 10 at 10-11 (N.D. Ala. Oct. 28, 2014) (dismissing for failure to exhaust a particular claim); *see also Lambert v. Ala. Dept. of Youth Servs.*, 150 Fed. App. 990 (11th Cir. 2005) (per curiam) (affirming dismissal of allegations in complaint that were not included in the EEOC charge).

Accordingly, Davis may not assert a Title VII retaliation in benefits claim or a Title VII disparate impact in benefits claim. The undersigned will not address Defendants' additional arguments that a disparate impact claim cannot be brought pursuant to § 1981 (count 5) or that the Title VII retaliation in benefits claim cannot be brought against Defendant Adams.

**C. Count 3: Davis May Be Able To State a Claim for Race-Based Disparate Treatment**

Defendants contend Davis's race-based disparate treatment claim is due to be dismissed because Davis has failed to plead facts to establish such a claim. (Doc. 44 at 9-10). In response, Davis argues her second amended complaint alleges the Infinity Defendants used the bilingual requirement as a pretext to intentionally discriminate against African-American employees because the policy protected the employment of a significant number of white employees whose job performance was inferior to Davis's job performance. (Doc. 48 at 18). Specifically, Davis alleges the bilingual requirement was a "false pretense" supported by her allegations that she had been performing her job in an exemplary manner and the job had not changed in a way to necessitate fluency in both English and Spanish. (Doc. 43 at ¶ 56). Additionally, to support her

15

assertion that the bilingual requirement was merely a pretext for race-based discrimination, Davis alleges twelve of the seventeen employees terminated from the Policy Services Specialist job were African-American. (Doc. 43 at ¶ 18). She specifically alleges that the Infinity Defendants retained a white employee despite receiving poor performance ratings and being placed on probation for lack of productivity, another white employee despite being demoted because of poor performance, and two white employees who had received discipline for being late to work were retained. (*Id.*at ¶¶ 16, 18).

Defendants take issue with the fact that Davis never expressly alleges that the white employees who were retained spoke fluent Spanish and English. However, it can be inferred from Davis's allegations that the white employees with inferior job performance were retained under the bilingual policy. (Doc. 43 at ¶¶ 12-22, 28-30). At this stage of the litigation, Davis has presented sufficient (although disorganized, confusing, and repetitive) allegations that may potentially support a claim for race discrimination. The motion to dismiss count 3 for failure to state a claim is **DENIED**. Davis will be permitted to replead her race-based disparate treatment claim.

### IV. Conclusion

For the reasons sated above, the motion to dismiss, (doc. 43), is **DENIED**; however, the alternative motion for a more definite statement is **GRANTED**, as limited herein. Davis's second amended complaint, (doc. 43), is **STRICKEN**. Davis will be permitted *one last opportunity* to amend her complaint by **October 6, 2017**.

For the reasons set forth in Section B, the third amended complaint may not include a Title VII retaliation in benefits claim or a disparate impact in benefits claim. The third amended complaint may include the following claims:

- Title VII disparate impact termination (national origin) claim against Infinity Defendants;
- Title VII disparate treatment termination (national origin) claim against Infinity Defendants;
- Title VII and 42 U.S.C. § 1981 disparate treatment termination (race) claim against Infinity Defendants;
- 42 U.S.C. § 1981 retaliation in benefits against all Defendants;
- ERISA: breach of contract against all Defendants; and
- ERISA: interference with rights against all Defendants.

In the third amended complaint, Davis should continue to set forth separate causes of action in numbered counts against specific defendants. Davis should assert these claims in the form of "a short and plain statement" demonstrating that she is entitled to relief, with each paragraph limited as practicable to a single set of circumstances. *See* FED. R. CIV. P. 8(a)(2), 10(b). Although Davis should describe in sufficient detail the factual basis for each of her claims and how each Defendant is responsible, she ***must refrain*** from including immaterial and redundant allegations as well as impermissible legal arguments/conclusion. Notably, Davis should not incorporate allegations that are not relevant to the claim.

DONE this 22nd day of September, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE