# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 2:15-cv-01111-JHE |
| | ) | |
| INFINITY INSURANCE CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Stephanie Davis ("Davis") initiated this action against Infinity Insurance Co., Infinity Property and Casualty Corp., (collectively referred to as "Infinity") and Robin Adams (collectively "Defendants") on July 1, 2015, and amended her complaint two days later. (Docs. 1 & 3). On August 14, 2015, Defendants moved to dismiss, or, in the alternative, for a more definite statement, alleging the complaint was a shotgun pleading. (Doc. 9). Davis then moved for leave to amend her complaint.[2] (Doc. 23). On August 29, 2016, the undersigned denied Davis's motion for leave to amend as futile, but permitted her to file another motion to amend consistent with the memorandum opinion and order. (Doc. 40).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

[2] Prior to moving for leave to amend, Davis attempted to file a second amended complaint, (doc. 18), asserting in her response to the motion to dismiss that the amendment mooted the bases for dismissal and for a more definite statement, (doc. 19 at 3). This second amended complaint was stricken as improperly filed. (Doc. 21).

1

On September 28, 2016, Davis moved for leave to file a second amended complaint, (doc. 41), and the undersigned granted Davis's motion, (doc. 42). (*See* doc. 43 (second amended complaint)). Defendants again moved for dismissal or a more definite statement, again contending the complaint was a shotgun complaint. (Doc. 44). The undersigned denied the motion to dismiss, but granted the motion for a more definite statement. (Doc. 50).

On October 6, 2017, Davis filed her third amended complaint. (Doc. 51). Defendants have now moved for partial dismissal of that complaint. (Doc. 52). The motion is fully briefed and ripe for review. (Docs. 52, 53 & 54). For the reasons stated below, the motion to dismiss is **GRANTED IN PART and DENIED IN PART**.

## I. Standard of Review

Rule 12(b)(6), FED. R. CIV. P., permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

## II. Background[3]

This is the third motion to dismiss filed in this case, and the facts are mostly familiar. In September 2014, Infinity announced a termination and hiring plan that required current employees and new hires to be fluent in Spanish (the "bilingual policy"). (Doc. 51 at ¶ 12). At the time Davis, a non-Hispanic African-American who is not fluent in Spanish, was employed by Infinity as a Policy Services Specialist. (*Id.* at ¶ 11). In September 2014, Davis received a letter from Infinity stating it was terminating her and other employees who were not fluent in Spanish. (*Id.*

---

[3] "When considering a motion to dismiss [or, as here, its equivalent], all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, these "facts" are taken directly from the third amended complaint.

at ¶ 13). Two days later, Davis met with two Infinity executives who informed her she was being terminated because she was not fluent in Spanish. (*Id*.).

Despite its policy, Infinity retained a number of Caucasian, non-Hispanic employees. (*Id*. at ¶ 15). These employees were not fluent in Spanish.[4] (*Id*.). These retained employees were all less senior and less productive than Davis; some had also received formal discipline, which Davis had not. (*Id*. at ¶¶ 15-17).

In her third amended complaint, Davis asserts the following claims: (1) Title VII disparate impact termination (national origin) claim against Infinity Defendants; (2) Title VII disparate treatment (national origin) termination claim against Infinity Defendants; (3) Title VII and 42 U.S.C. § 1981 disparate treatment termination (race) claim against Infinity Defendants; (4) Title VII and 42 U.S.C. § 1981 retaliation in benefits against all Defendants; (5) ERISA: breach of contract against all Defendants; and (6) ERISA: interference with rights against all Defendants. (Doc. 51).

### III. Analysis

Defendants' previous motions to dismiss challenged the complaint as a shotgun pleading, and the undersigned agreed with that characterization. (*See* docs. 40 & 50). This time they take a different tack, contending inconsistent facts in Davis's third amended complaint render her claims implausible. Specifically, they argue the fact Infinity retained Caucasian, non-Hispanic employees who did not speak Spanish, (doc. 51 at ¶¶ 15 & 61), calls into question the existence of

---

[4] This fact did not appear in previous iterations of Davis's complaint. (*See* docs. 1, 3 & 43)

4

the bilingual policy Davis alleges, (doc. 51 at ¶¶ 12-13, 21, 29-30 & 61). (Doc. 52 at 5). This, they say, demands dismissal of Davis's disparate impact and disparate treatment claims, (Counts I, II, and III) under Rule 12(b)(6).[5] (*Id*. at 5-8). Defendants also argue Davis should be sanctioned for failing to include in her previous complaints that the retained Caucasian employees were not Spanish speakers. (*Id*. at 8-9). In response, Davis urges that the purportedly inconsistent facts are reconcilable by drawing the inference that Defendants' racial discrimination shielded the non-Spanish-speaking, non-Hispanic Caucasian employees from the bilingual policy, which would otherwise have been enforced against them. (Doc. 54 at 10-14).

### A. Sufficiency of factual allegations

The fulcrum of Defendants' arguments against Davis's national origin discrimination claims is that the bilingual policy could not have existed based on the facts Davis alleges, thus invalidating Counts I and II. However, Defendants also argue Davis's racial discrimination claim is meritless since she was terminated *because of* the neutral bilingual policy they claim is nonexistent, so her attempts to compare her performance to Caucasian comparators to support Count III is misplaced. (Doc. 52 at 7). Left unsaid is why the undersigned should infer that the bilingual policy *did not* exist for the two counts the absence of a bilingual policy would defeat, and then infer that it *did* exist for the count the policy's existence would arguably undermine.

In any event, it is unnecessary to infer that the bilingual policy existed because the third amended complaint contains direct factual allegations to support its existence. Davis initially describes the bilingual policy as one that "conditioned hiring and continued employment on being

---

[5] Defendants do not challenge Counts IV, V, or VI.

5

fluent in Spanish," (doc. 51 at ¶ 12), and there is some obvious tension between this paragraph and her later allegation that "Infinity terminated Stephanie Davis but continued to employ a number of Caucasian, non-Hispanic employees in Birmingham, Alabama . . . [who] were not fluent in Spanish." (*Id*. at ¶ 15). However, Davis alleges: (1) Infinity explicitly announced it was implementing the policy, (*id.* at ¶ 12); (2) Infinity sent Davis a letter stating she and other non-Spanish-speaking employees were being terminated, (*id*. at ¶ 13);[6] and (3) Davis met with Infinity executives who told her that she was being terminated because of her lack of fluency in Spanish, (*id*.). Although these allegations may be somewhat inconsistent with the allegation that Infinity retained non-Spanish-speaking Caucasian employees, Defendants offer no reason why that

---

[6] Defendants challenge Davis's reference to this letter as an indication that a bilingual policy existed and attach a copy of this letter to their motion. (Doc. 52 at 12-13). Ordinarily, a court may not consider materials outside the complaint, such as an attached document, in addressing a motion to dismiss without converting it to a motion for summary judgment. FED. R. CIV. P. 12(d). However, if the attached document is (1) central to the plaintiff's claim and (2) undisputed (in that its authenticity is not challenged), the court may appropriately consider it. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, the letter meets both requirements: Davis does not dispute its authenticity (and in fact endorses it, (*see* doc. 54 at 13)), and it is "a necessary part of [her] effort to make out a claim" that a facially neutral bilingual policy existed, *see Day*, 400 F.3d at 1276. Therefore, considering the letter does not require that the motion to dismiss be converted to a motion for summary judgment.

However, the letter does not indicate what Defendants contend, which is that "[t]he ability to speak Spanish was not a factor" in her termination. (Doc. 52 at 8 n.17). The letter states "we will be transitioning some positions from the call center and policy services in Birmingham to McAllen, Tucson, and/or Miami *to increase the number of employees with bilingual Spanish/English skills* . . ." (*Id*. at 12) (emphasis added). Defendants seize on later language that indicates Davis and other employees were selected for termination "based on a combination of factors, including performance, seniority, disciplines and relevant skill sets," (*id*.), but it is a reasonable inference that, at a minimum, "relevant skill sets" includes Spanish language facility and was thus a factor in Davis's termination.

inconsistency should be resolved by concluding there was no policy at all, rather than that Infinity ignored its policy by making race-based exceptions for the Caucasian employees—the inference Davis suggests.

But the fact the complaint contains facts supporting the existence of the bilingual policy does not necessarily mean Davis's claims proceed. Setting aside Defendants' contentions the bilingual policy did not exist at all, their remaining arguments are: (1) Infinity could not have intended to discriminate against non-Hispanics through the bilingual policy because it intentionally retained non-Hispanics, so Davis has no viable national origin disparate treatment claim, (doc. 52 at 6-7); and (2) Davis's race disparate treatment claim is due to be dismissed because she was terminated pursuant to the neutral bilingual policy, (*id*. at 7).[7]

These arguments rest mainly on the principle that factual allegations that eliminate an element of a legal theory foreclose that theory. To that end, Defendants rely heavily on the logic of *Thomas v. Kamtek, Inc.*, 143 F. Supp. 3d 1179 (N.D. Ala. 2015), in which, at summary judgment, the court observed that the plaintiff's complaint contained multiple claims that required but-for causation that should have been dealt with at the motion to dismiss stage. (*See* doc. 52 at 3-5; doc. 55 at 3-4). Davis correctly notes her Title VII national origin discrimination claims and Title VII and § 1981 and race discrimination claims do not require but-for causation, (doc. 54 at 3), unlike the ADEA claims in *Thomas*. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar,* 570 U.S. 338, 343 (2013) ("[When a]n employee alleges status-based discrimination under Title VII

---

[7] As discussed below, Defendants' argument Count I should be dismissed is founded solely on the nonexistence of the bilingual policy. *See* section II.A.1.

7

. . . [s]o-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives"); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII claims and § 1981 claims "have the same requirements of proof and use the same analytical framework"). Defendants do not try to account for the dissimilarities between *Thomas* and this case; instead, they clarify in their reply that they rely on *Thomas* for only for the proposition that a plaintiff may plead alternative claims but she may not plead causes of action her pleaded facts contradict. (Doc. 55 at 3-4) (citing *Thomas*, 143 F. Supp. 3d at 1188).

Defendants cite a number of additional cases in which the facts the plaintiffs pleaded truly conflicted with their causes of action. (Doc. 52 at 5 n.12; doc. 55 at 3-4). In *Selby v. Goodman Mfg. Co., LP*, No. 2:13-CV-2162-RDP, 2014 WL 2740317 (N.D. Ala. June 17, 2014) and *Selman v. CitiMortgage, Inc.*, No. CIV.A. 12-0441-WS-B, 2013 WL 838193, at (S.D. Ala. Mar. 5, 2013), the plaintiffs asserted unjust enrichment claims even though their complaints also contained factual allegations that a contract existed. Under Alabama law, the existence of an express contract entirely precludes an unjust enrichment claim. *Selby*, 2014 WL 2740317 at *6 (citing *White v. Microsoft Corp*., 454 F. Supp. 2d 1118, 1133 (S.D. Ala. 2006)). The plaintiffs in these cases did not simply weaken their unjust enrichment claims by alleging that a contract existed; their allegations foreclosed the unjust enrichment claims entirely.[8] Contrary to Defendants'

---

[8] In addition to these cases, Defendants cite *Savage v. Secure First Credit Union*, 107 F. Supp. 3d 1212 (N.D. Ala. 2015). (Doc. 52 at 5 n.12). In *Savage*, the court determined that the plaintiff could not plead inconsistent theories of recovery when several of those theories required but-for causation. *Id*. On a motion to dismiss, it held "there can, in theory and logic, be only

contentions, these cases do not support that factual allegations undermining, but not directly contradicting, legal theories are unequivocally implausible under *Iqbal* and *Twombly*.

Conversely, Davis argues that the undersigned has already resolved the viability of two of the three claims Defendants challenge. (Doc. 54 at 12-13). With respect to the disparate treatment national origin claim, Davis states that "[t]he Court has already implicitly ruled that the plaintiff's national origin discrimination claims are not inconsistent and are plausible in these circumstances." (Doc. 54 at 12) (citing doc. 50 at 17). This contention is misplaced, because the "implicit" ruling Davis references was based on a complaint whose "rambling, disjointed, and redundant paragraphs" did not comply with the Federal Rules of Civil Procedure, (*see* doc. 50 at 7-8), and which notably did *not* contain Davis's factual allegation that Infinity retained non-Hispanic, non-Spanish-speaking Caucasians. Contradicting the latter point, Davis claims in a footnote she has already addressed the issue of Defendants' decision not to terminate non-bilingual

---

one 'but-for' cause," and the plaintiff's failure to specifically plead that any of the inconsistent theories of recovery were the sole cause of the adverse employment actions she complained of required her to elect a single theory under which to proceed. *Id*. at 1216-18. The Eleventh Circuit reversed and remanded, holding in a brief, unpublished *per curiam* decision that the plaintiff could plead alternative causes of action. *Savage v. Secure First Credit Union*, No. 15-12704, 2016 WL 2997171, at *1 (11th Cir. May 25, 2016). Perhaps recognizing *Savage's* limited utility, Defendants' reply omits the case when recounting the authority they cited in their motion. (*See* doc. 55 at 4).

Relatedly, Davis spends a great deal of time highlighting the dubious legacy of *Culver v. Birmingham Board of Education*, 646 F. Supp. 2d 1270 (N.D. Ala. 2009). (Doc. 54 at 15-21). Defendants do not actually cite this case, but it is the progenitor of the reasoning in *Savage* (and *Thomas*) that a plaintiff may not plead alternative but-for claims. Accepting that Defendants challenge only the consistency of the *facts* Davis pleaded with the elements of her claims (and not, as Davis argues, whether she may permissibly allege multiple, alternative *motives* for her termination), there is no need to explore *Culver's* reasoning further.

Caucasian employees in a previous response, and cites the undersigned's memorandum opinion addressing her second amended complaint for the proposition that "the Court has already recognized that the plaintiff could plead a claim for disparate treatment in these circumstances." (Doc. 54 at 9 n.3) (citing doc. 48 at 17-20 and doc. 50 at 15-16). A cursory review of Davis's previous response and the memorandum opinion shows this is not the case. The response makes no reference at all to the Caucasian employees' ability to speak Spanish, and in the cited portion of the memorandum opinion, the undersigned stated that "it can be inferred from Davis's allegations that the white employees with inferior job performance **were retained under the bilingual policy**." (Doc. 50 at 15) (emphasis added). Based on that inference—derived from Davis's "disorganized, confusing, and repetitive" factual allegations—the undersigned concluded "[a]t this stage of the litigation," Davis's allegations "**may potentially support** a claim for race discrimination." (*Id*.) (emphasis added). This does not settle the issue. Davis cannot rely on a previous (and tentative) conclusion resting on an inference the undersigned made because Davis had not supplied complete information when, after supplying the missing information, the inference is no longer reasonable.

A fresh look at the viability of Davis's claims is required.

**1. Count I – Title VII disparate impact (national origin)**

In a disparate impact claim, a plaintiff must establish three elements: "(1) there is a significant statistical disparity between the proportion of members of the protected class available in the labor pool and the proportion of members of the protected class hired; (2) there is a specific, facially neutral employment practice; and (3) a causal nexus exists between the employment

practice and the statistical disparity." *Jefferson v. Burger King Corp.*, 505 F. App'x 830, 834 (11th Cir. 2013) (citing *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000)).

Defendants challenge Davis's disparate impact national origin claim only on the basis she has failed to allege facts plausibly supporting the second element: that Infinity employed a facially neutral bilingual policy.[9] As discussed above, Davis has adequately pleaded facts that support the existence of the bilingual policy, notwithstanding some non-Hispanic employees were retained despite it. Therefore, Defendants' motion is due to be **DENIED** as to their challenge to Davis's disparate impact claim.

**2. Count II – Title VII disparate treatment (national origin)**

A Title VII plaintiff asserting a disparate treatment claim must show the defendant acted with discriminatory intent. *Denny v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir.2001). "In order to show discriminatory intent, a plaintiff must demonstrate that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group." *Joe's Stone Crab*, 220 F.3d at 1273 (internal quotation marks, alterations, and citation omitted).

---

[9] Defendants briefly note it is "***implausible*** . . . that the alleged bilingual policy had a disparate impact on non-Hispanics," (doc. 52 at 6) (emphasis in original). This appears not so much to be a challenge to Davis's pleading of the first element as a general recitation of their conclusion Davis's disparate impact claim is foreclosed under the facts she alleges. Notably, this motion to dismiss differs from Defendants' previous direct challenge to Davis's disparate impact claim by not addressing Davis's allegations of statistical disparity at all. (*Compare* doc. 52 at 6 *with* doc. 9 at 13). To the extent Defendants intend to address the first disparate impact element as a separate matter from the existence of the bilingual policy, their argument is undeveloped and will not be considered. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001).

11

Defendants' arguments find some footing here. While they premise their contention Count II is due to be dismissed in part on the non-existence of the bilingual policy (a non-starter, as discussed above), they alternatively suggest the intent behind the policy could not be to discriminate on the basis of national origin in favor of Hispanics because Infinity intentionally retained non-Hispanic employees. (Doc. 52 at 6-7). Not only does this make intuitive sense, the undersigned has already discussed this exact issue in a previous memorandum opinion in the context of Davis's proposed second amended complaint:

> Davis does name a series of specific comparators, who are white and were not terminated despite having discipline records and lower seniority, (doc. 23-2 at 30-32), but those "comparators" are not outside of the only class for which she alleges a claim (current and prospective *non-Hispanic* employees), (see id. at ¶¶ 45-97). It is unclear why these comparators are included in the allegations, especially since they appear to undermine Davis's claim that intentional discrimination against non-Hispanics was the reason for the challenged bilingualism requirement.

(Doc. 40 at 25 n. 16) (emphasis in original).

Arguing the claims are in fact consistent with each other, Davis reframes them as follows: "the plaintiff has alleged the defendants instituted a policy which took jobs from non-Hispanic employees and gave them to Hispanic persons, which was national origin discrimination. The defendants then chose to protect the jobs of certain white employees from the harmful effects of that policy, which was race discrimination." (Doc. 54 at 15). This muddies the waters by focusing only on the racial component of intentionally retaining Caucasian employees while ignoring the national origin component—that those intentionally retained Caucasian employees were non-Hispanic. Only the latter is relevant to Count II.

Further adding to the confusion, Davis misreads Defendants' citations of *Litman v. Sec'y of the Navy,* 703 F. App'x 766, 769 (11th Cir. 2017), and *Patel v. Ga. Dep't BHDD,* 485 F. App'x

982 (11th Cir. 2012), (doc. 52 at 7 n.16) as a challenge to her race-based disparate treatment claim rather than her national origin disparate treatment claim.[10] (Doc. 54 at 13). In *Litman*, the Eleventh Circuit examined the plaintiff's claims through the lens of the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[11] *Id.* at 769-70. Under that framework, when a plaintiff seeks to prove intentional discrimination through circumstantial evidence, she "must show [s]he (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) similarly situated employees outside of [her] protected class were treated more favorably or that [s]he was replaced by someone outside of [her] protected class." *Id.* at 769 (citing *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000)). The plaintiff in *Litman* failed to allege in his complaint that the defendants treated employees outside of his protected class more favorably; consequently, the district court dismissed his claims, and the Eleventh Circuit affirmed. *Id.* at 768-69. Davis argues *Litman* is

---

[10] *Litman* and *Patel* are sufficiently similar that the undersigned limits the following discussion to *Litman* alone.

[11] Both the Supreme Court and the Eleventh Circuit have expressly declined to treat the evidentiary standard of *McDonnell Douglas* (applicable at the summary judgment stage) as a pleading standard (applicable at the motion to dismiss stage) for an employment discrimination plaintiff's complaint. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 999 (2002) ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss."); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citing *Swierkiewicz* and reaffirming, post-*Iqbal* and -*Twombly*, that *McDonnell Douglas* is an evidentiary standard and not a pleading standard). However, the components of a prima facie case are a useful guideline for determining whether a plaintiff's complaint can survive dismissal under Rule 12(b)(6). *Cf. Bowers v. Bd. of Regents of Univ. Sys. Of Georgia*, 509 F. App'x 906, 910 (11th Cir. 2013) (elements of prima facie case of Title IX discrimination a guideline for determining whether a plaintiff has stated a claim).

13

distinguishable because she "*has* pled that the plaintiff was terminated while white employees — who were not bilingual and also had inferior job performance — were not terminated." (Doc. 54 at 13 n.6). But the issue is not whether Davis has pleaded that *white* employees were treated differently than her. Davis's protected class, for the purposes of her national origin disparate treatment claim, is non-Hispanics. Because she has alleged non-Hispanic employees were both retained and fired, her complaint is insufficient to support that Infinity intentionally treated members of her protected class (non-Hispanics) differently than persons outside her protected class (Hispanics).[12]

Davis also argues she is not required to assign Infinity's sole motive, and that "it is entirely possible for a defendant to make a discriminatory decision which involves more than one discriminatory motive, such as age and gender or age and race." (Doc. 54 at 21-22) (citing *Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1315 at n.4 (M.D. Ala. 2010)). The problem with Davis's allegations is not that she has assigned multiple motives to Infinity's actions. It is that she has assigned a motive for her national origin disparate treatment claim—Infinity's intention to discriminate in favor of Hispanic employees—that cannot be reconciled with the fact

---

[12] Because intent is not a component of Davis's national origin disparate impact claim, the *McDonnell Douglas* framework does not apply at all to it. *See Equal Employment Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016) ("The crux of the disparate treatment inquiry, and the question the *McDonnell Douglas* framework seeks to answer, is whether the employer intentionally discriminated against particular persons on an impermissible basis, not whether there was a disparate impact on a protected group as a whole.").

Infinity took an action totally inconsistent with that motive when it intentionally ensured the bilingual policy would not be applied to certain non-Hispanic employees.

Finally, Davis attempts to harmonize her national origin disparate treatment claim with her factual allegations by distinguishing decisions to terminate an employee, which were made on the basis of national origin, from exemptions to termination, which were made on the basis of race. (Doc. 54 at 11-12). She points to these different types of employment actions—she was terminated, Hispanic employees were hired, and white employees were retained—to support that there is no conflict between her claims. (*Id*. at 12 n.5).[13] This is unconvincing. Terminating and retaining employees are two sides of the same coin; a decision to terminate an employee is a decision not to retain her, and vice versa. And the decision to retain non-Hispanic employees pursuant to the bilingual policy (i.e., not to terminate them) obviously factors into whether it is plausible the policy was motivated in part by intent to discriminate against non-Hispanics.

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Davis's factual allegations fall short even of consistency with Defendants' liability, and her contention Infinity enacted the bilingual policy with the intent to discriminate against non-Hispanics cannot cross the plausibility threshold of *Iqbal* and *Twombly*. Therefore, Defendants'

---

[13] Davis includes a reference to class claims in this footnote, which is puzzling because (unlike Davis's original and first amended complaints, (*see* docs. 1 & 3), but like her second amended complaint, (*see* doc. 43)) the third amended complaint contains no class claims or allegations. (*See* doc. 51). Defendants also note Davis's response presents the plaintiff in the case style as "Stephanie Davis, on behalf of herself and others similarly situated," (doc. 55 at 1 n.1), but chalk this up to a mistake on Davis's part.

motion is due to be **GRANTED** as to Count II.

### 3. Count III – Title VII and § 1981 disparate treatment (race)

As noted above, Defendants initially argue Davis's race disparate treatment claim is nonviable because Davis has alleged she was terminated because of her lack of bilingual ability, not her race. (Doc. 52 at 7). In response to Davis's contention it was the decision to shield Caucasian employees from the effects of the bilingual policy that represents disparate treatment, Defendants dispute Davis has adequately pleaded a "selective enforcement" disparate treatment claim. (Doc. 55 at 2-3). Instead, they argue Davis has, through argument in her brief, modified her claim from a job-performance based claim to the arguably new theory she now advances. (*Id*. at 7-8). In support of this, Defendants cite paragraph 19 of Davis's complaint:

> Stephanie Davis (1) is African-American; (2) was fully qualified for her job; and (3) suffered an adverse employment action by being terminated from her job. Caucasian employees who were not fluent in Spanish; were less able to perform the duties of plaintiff's position; and were otherwise similarly situated were treated better than her by being allowed to continue as employees

(Doc. 55 at 8) (citing doc. 51 at ¶ 19). Defendants focus on the last two clauses, but ignore paragraph 62 (which follows a paragraph identical to paragraph 19):

> Defendants' bilingual policy is a pretext for intentional discrimination, based on the fact that Infinity took the jobs that Stephanie Davis and other African-American [sic] and gave those jobs to Caucasian, non-Hispanic employees who were not fluent in Spanish either.

(Doc. 51 at ¶ 62). While this is not necessarily the cleanest articulation Davis could have made of her race disparate treatment claim, it is still relatively clear what she is alleging: that, notwithstanding their inferior job performance, white employee comparators—who, like Davis, were not fluent in Spanish—were retained under the bilingual policy, leading to the inference

Infinity intentionally discriminated on the basis of race in applying the policy. This is sufficient to state a claim for race-based disparate treatment. Defendants' motion to dismiss is due to be **DENIED** as to Count III.

### B. Sanctions

In a roughly page-long section of their brief, Defendants request sanctions, including attorneys' fees, against Davis for her "two years of misdirection that have wasted time and resources." (Doc. 52 at 8-9). Their factual basis for this request is that Davis "has known all along that her continued employment was not conditioned on her ability to speak Spanish." (*Id*. at 8). To support this, they point to the letter attached to their motion, which they say shows that the ability to speak Spanish was not a factor in Davis's termination. (*Id*. at 8 n.17). However, the undersigned has addressed Defendants' contentions regarding the letter and found them misplaced. (*See supra*, n.4). Additionally, Defendants' request for sanctions does not cite any authority, and their reply does nothing to illuminate its legal basis. It is conceivable Defendants seek sanctions under Rule 11, as they reference Davis's "omitted and misrepresented fact" to the Court, (*id*. at 8), but the undersigned declines to proceed further with that guess. Defendants' request for sanctions is **DENIED**.

### IV. Conclusion

For the reasons stated above, the motion to dismiss, (doc. 52), is **GRANTED IN PART** to the extent that Davis's Count II national origin disparate treatment claim is **DISMISSED**. To the extent Defendants request dismissal of other claims and sanctions against Davis, the motion is **DENIED**. Defendants are **DIRECTED** to answer the third amended complaint by **June 26, 2018**. The parties are further **DIRECTED** to confer on dates for a new scheduling order and

submit a joint status report including those dates by **July 3, 2018**.

DONE this 12th day of June, 2018.

                                                           **JOHN H. ENGLAND, III**
                                                           UNITED STATES MAGISTRATE JUDGE